# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

LEONA FELDT,                          )
                                      )
                   Plaintiff,         )      **CIVIL ACTION**
                                      )
v.                                    )      No.  12-1064-MLB
                                      )
KAN-DU CONSTRUCTION CORP., et al.,    )
                                      )
                   Defendants.        )
_____  )

### MEMORANDUM AND ORDER

This case comes before the court on defendants' motions for summary judgment.  (Docs. 103, 105).  The motions have been fully briefed and are ripe for decision.  (Docs. 104, 106, 125, 126, 127, 128).[1]

---

[1]  On June 16, 2014, Feldt filed her responses to defendants' motions.  (Docs. 115, 116).  On July 10, 2014, the court struck the responses as non-compliant and ordered Feldt to re-file her responses in accordance with the rules. (Doc. 120).  Feldt re-submitted her responses on August 8, 2014.  Defendants Kan-Du and Falconburg move to strike Feldt's response to their motion as non-compliant with the court's order of July 10.  (Doc. 127 at 2).

The court is sympathetic with Kan-Du and Falconburg's argument. Feldt's amended response is unnecessarily long and repetitive (it is equally so with respect to Heritage's motion but Heritage has not filed a similar motion to strike.)  Indeed, many pro se prisoners file better, more compliant, responses in civil rights cases.  In dealing with Boone, the court tries to look beyond Boone's many failings and concentrate on the court's obligation to do justice.  Striking the response would not serve the interest of justice.  It would unjustly and detrimentally affect Feldt and possibly create appellate issues which would only prolong the ultimate resolution of this unnecessarily protracted case.  However, if defendants are so inclined, they may move for sanctions under Fed. R. Civ. P. 11 and/or 28 U.S.C. § 1927. This is not an invitation to do so or an indication of how the court would rule on such motions.  But it is the fairest way to deal with the problems which have arisen in this case.

I.    **Facts**[2]

Defendant Heritage Homes (Heritage) builds modular homes in Nebraska.  The homes are then sold to distributors which, in turn, enter into a sales contract with the home buyer.  Heritage delivers to the buyer's home site and the distributor completes the home by performing the site work.  Site work consists of constructing the foundation, garage and porch, and installing siding.

In November 2010, Justin Lockhart, a sales representative for Heritage, met with defendant Marty Falconburg to discuss the possibility of defendant Kan-Du Construction (Kan-Du), a company owned by Falconburg, entering into a distributor agreement with Heritage.  Falconburg had several years of construction experience but had not built a traditional or modular home.  On January 26, 2011, Kan-Du entered into a distribution agreement with Heritage.  The agreement states that Kan-Du is an independent contractor and that Kan-Du is not Heritage's agent.

Only three months later, on May 3, 2011, plaintiff Leona Feldt executed a purchase agreement with Kan-Du for the purchase of a Heritage modular home.[3]  Heritage was not a party to the agreement.  The agreement was signed by Feldt and witnessed by Lockhart and Cindy Falconburg, Marty Falconburg's wife and an owner of Kan-Du.  Lockhart prepared the agreement, including listing out Kan-Du's site work

---

[2]    All facts set forth are either uncontroverted, or, if controverted, taken in the light most favorable, along with all favorable inferences, to Feldt.  Additional facts will be discussed in the analysis section.

[3] The agreement lists February 18, 2011, in bold letters at the top of the first page.  The agreement, however, was signed by Feldt on May 3.

responsibilities and pricing on the second page of the agreement. Over a period of several months, Feldt paid $317,700 due under the terms of the agreement.  Feldt's checks were payable to Kan-Du.

The same day, Kan-Du and Falconburg signed a sales order with Heritage for the construction of Feldt's modular home.  Falconburg paid Heritage $183,000 for the modular home.  Heritage constructed the modular portion of the home ordered.  After the home was completed by Heritage, it was delivered to Feldt's home site in Hoxie, Kansas. Falconburg performed some of the site work listed in the agreement. Heritage Homes did not perform any of the site work.  Kan-Du failed to complete the site work for Feldt.   Kan-Du also failed to pay various subcontractors that performed site work.

Feldt has brought state law tort claims and breach of contract claims against all defendants.  Defendants move for summary judgment.

II.   **Summary Judgment Standards**

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here.  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim.  <u>Adamson v. Multi Community Diversified Svcs., Inc.</u>, 514 F.3d 1136, 1145 (10th Cir. 2008).  When confronted with a fully briefed motion for summary judgment, the court must

-3-

ultimately determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If so, the court cannot grant summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

### III.  Analysis

A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits, including that state's choice-of-law rules.  See ORI, Inc. v. Lanewala, 147 F. Supp.2d 1069, 1078 n. 9 (D. Kan. 2001).  Feldt has alleged breach of contract claims and tort claims against defendants.  Kansas courts apply the doctrine of *lex loci delicti*, which requires a court to evaluate a tort claim according to the law of the state where the tort occurred. See Ling v. Jan's Liquors, 237 Kan. 629, 703 P.2d 731, 735 (1985). A tort occurs where the injury occurs. Id. Because any injuries arising out of this claim occurred in Kansas, the court applies Kansas law.

#### A.  Heritage Homes Motion for Summary Judgment

#### 1.  Breach of Contract

Feldt alleges in the pretrial order that Heritage breached an oral agreement to select an experienced and well-qualified construction contractor to build Feldt's home.[4]  In order to state a

---

[4] Feldt spends a considerable amount of time arguing that Heritage was a party to the purchase agreement.  Feldt's breach of contract claim set forth in the pretrial order, however, is not based on the purchase agreement. (Pretrial Order at 7-8).  The pretrial order controls the course of the action; therefore, the court will not consider a theory which was not raised in the pretrial order.  D. Kan. R. 16.2(b).

claim for breach of contract under Kansas law, a plaintiff must establish the following elements:  (1) the existence of a contract between the parties;  (2) consideration;  (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff suffered damage caused by the breach.  <u>Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.</u>, 265 F. Supp.2d 1179, 1187 (D. Kan. 2003).

Heritage contends that Feldt has not established the existence of an agreement.  Feldt responds that there "certainly was a contract which was made by Heritage, acting through Justin Lockhart" in which Feldt "agreed (either explicitly or impliedly) with Justin Lockhart that he would perform this function." (Doc. 125 at 35).  Feldt cites to her deposition testimony to support the existence of an agreement. The cited portions, however, do not support the existence of an agreement between Feldt and Heritage.  Feldt's testimony states that Lockhart recommended Falconburg and that Feldt trusted in Lockhart.

Because Feldt has failed to identify any evidence to establish the existence of an agreement with Heritage, Heritage's motion for summary judgment is granted.

### 2.  Fraud and Negligent Misrepresentation

Heritage contends that summary judgment is appropriate on Feldt's fraud and negligent misrepresentation claims because there is no evidence that Lockhart represented that Heritage had selected or would select a proper and able, experienced and well-qualified home builder.  (Pretrial Order at 8).

### Negligent Misrepresentation

Under Kansas law, the court must instruct a jury as follows with

-5-

respect to Feldt's claim of negligent misrepresentation:

> One who, in the course of his business supplies false information for the guidance of another person in such other person's business transactions, is liable for damages suffered by such other person caused by reasonable reliance upon the false information if:
>
> 1. The person supplying the false information failed to exercise reasonable care or competence in obtaining or communicating the false information; and,
>
> 2. The person who relies upon the information is the person for whose benefit and guidance the information is supplied; and,
>
> 3. The damages are suffered in a transaction that the person supplying the information intends to influence.

PIK-Civil 4th 127.43; Mahler v. Keenan Real Estate, Inc., 255 Kan. 593, 605, 876 P.2d 609 (1994).

In its motion, Heritage contends that Feldt has no evidence to support a finding that Lockhart made the statements concerning Kan-Du and Falconburg which are set forth in the Pretrial Order, i.e. that Heritage would select a proper and able, experienced and well-qualified home builder. Feldt responds that Lockhart told Feldt that Kan-Du (and Falconburg) was a good company, would do a turnkey job, that they could complete the job and that they would complete the job. (Feldt Depo. at 35-44).

Although Lockhart's statements, as testified to by Feldt, do not word for word state the language in the pretrial order, the court finds that Feldt's testimony conveys that Heritage, through Lockhart, assured Feldt that Kan-Du and Falconburg were qualified to finish the site work on Feldt's home without any issues. See Kreekside Partners v. Nord Bitumi U.S., Inc., 963 F. Supp. 959, 966-67 (D. Kan. 1997) (evidence that defendant stated that he had not had any problems with

the contractor and that the contractor could get the job done was sufficient to raise a genuine issue of fact with respect as to whether defendant negligently misrepresented that a contractor was qualified and suitable for the job).

In its reply, Heritage responds that the statements identified by Feldt are non-actionable opinion and cannot be a basis for her claim. Generally, statements of opinion are not actionable because a Feldt can form her own opinion and would have no right to rely on a defendant's representation. Fisher v. Mr. Harold's Hair Lab, Inc., 215 Kan. 515, 523, 527 P.2d 1026 (1974). However, "where the terms of dealings are not equal, and the representor has superior knowledge of the subject, a statement which would otherwise be one of opinion will be regarded as one of fact." Id.

In this case, there is no evidence that Feldt had any way to determine if Kan-Du and/or Falconburg were competent and could complete the job. Feldt's testimony shows that she was depending on Lockhart and trusted in his decision in selecting Kan-Du to complete her home. Lockhart clearly was in a position to have superior knowledge about Kan-Du and Falconburg. While Falconburg had done construction work, he had no experience with modular homes. Falconburg's testimony states that Feldt's home was to be part of his training and that he would only be responsible for the basement. (Falconburg Depo. at 34-36). Falconburg testified that Lockhart told him that Lockhart's crews would complete the majority of the work while Falconburg observed and that Falconburg would complete a training in Nebraska at a later date. Therefore, Lockhart had superior knowledge regarding Kan-Du and Falconburg's construction

-7-

abilities and Lockhart's statements can be regarded as facts, not opinions.  See <u>Kreekside Partners</u>, 963 F. Supp. at 968.

Moreover, based on Falconburg's testimony that he informed Lockhart that he had never worked on a modular home and that he would need to be trained to complete a modular home, there is genuine a dispute of material fact as to whether Lockhart's statements regarding Kan-Du and Lockhart's ability to complete the home were false.[5]

Viewing the evidence in a light most favorable to Feldt, the court finds that Feldt has raised a genuine issue as to whether Heritage misrepresented Kan-Du and Falconburg's qualifications and abilities to complete Feldt's home to her specifications.

Heritage's motion for summary judgment on Feldt's claim of negligent misrepresentation is denied.[6]

### Fraud

To state a claim for fraud, Feldt must prove the following five essential elements: (1) that false (or untrue) representations were made as a statement of existing and material fact, (2) that the representations were known to be false (or untrue) by the party making them, or were recklessly made without knowledge concerning them, (3) that the representations were intentionally made for the purpose of inducing another party to act upon them, (4) that the other party reasonably relied and acted upon the representations made, and (5)

---

[5]  Heritage does not assert that the statements identified by Feldt were true.

[6]  Heritage does not contend that there is insufficient evidence on the remaining elements of her negligent misrepresentation claim. Nevertheless, Feldt's testimony, viewed in a light most favorable to Feldt, supports a finding that she relied on Lockhart's statements to her detriment.

that the other party sustained damage by relying upon them.  PIK-Civil 4th 127.40; Indy Lube Inv., L.L.C. v. Wal-Mart Stores, Inc., 199 F. Supp.2d 1114, 1119 (D. Kan. 2002).

Again, Heritage contends that there is no evidence that Lockhart made any statements to Feldt regarding Kan-Du and Falconburg.  The court finds that there is a genuine issue of material fact as to whether Lockhart made the statements to Feldt and whether those statements were false at the time they were made.

Heritage asserts that Feldt cannot establish that Lockhart made the statements with an intent to deceive or reckless disregard for the truth.  Keeping in mind that this case is at the summary judgment stage, the court disagrees.  As discussed, Falconburg's testimony is that he had no experience with modular homes and that Lockhart informed him that Heritage would provide him training and Heritage's work crews would complete the majority of Feldt's home.  (Falconburg Depo. at 34-36).  Therefore, at a minimum, Feldt has created a genuine issue of material fact as to whether Lockhart recklessly made the representations that Kan-Du and Falconburg would do a turn-key job and that they would be able to complete the job to her specifications. Feldt's testimony supports a finding that she relied on Lockhart's statements and that reliance resulted in the damages to her home.[7]

In addition to the oral statements made by Lockhart, Feldt contends that Lockhart fraudulently concealed the fact that Kan-Du and Falconburg had never constructed a modular or traditional home prior

---

[7]   Feldt's expert report states that Kan-Du and Falconburg negligently completed the site work and that the home requires significant repairs to fix the damage.  (Doc. 126, Frank Comer report).

to working on her home.  Heritage asserts that this claim was not presented in the pretrial order and that Feldt should be estopped from raising it at this stage of the proceedings.  (Doc. 128 at 8).  The court disagrees.  The contentions in the pretrial order state that "Heritage knew, but did not inform the Plaintiff, that Marty Falconburg and Kan-Du Construction had never built a home, either modular or traditional." (Pretrial Order at 5).  Therefore, Feldt has preserved this claim.

Moreover, there is sufficient evidence to support this claim. Heritage was aware of this fact at the time Lockhart prepared the purchase agreement for Feldt and Heritage did not disclose this fact to Feldt at any time.  In light of the facts testified to by Falconburg and Feldt, the court further finds that Feldt has created a genuine issue of material fact as to whether Lockhart's failure to disclose this fact was reckless.

Heritage's motion for summary judgment on Feldt's fraud claims is denied.

### 3. KCPA

Feldt brings a claim under the Kansas Consumer Protection Act (KCPA) for the representations made by Heritage.  Heritage argues that summary judgment should be granted because its actions were not willful as required by K.S.A. 50-626(b)(2).[8]  Heritage violates K.S.A. 50-626(b)(2) if it willfully uses exaggeration, falsehood, innuendo, or ambiguity as to a material fact.  Kansas courts have repeatedly

---

[8]  Heritage also contends that Lockhart did not make the representations.  The court has determined, supra, that there is a genuine dispute of material fact as to whether Lockhart made the representations.

held that an act or omission is willful if a person "performed [it] with a designed purpose or intent . . . to do wrong or to cause injury to another." Unruh v. Purina Mills, LLC, 289 Kan. 1185, 1194, 221 P.3d 1130, 1139 (2009)(citing PIK civ. 4th 103.04). Ordinarily, whether an act or omission is deceptive under Section 50-626 of the KCPA is a question of fact for the jury. See Farrell v. Gen. Motors Corp., 249 Kan. 231, 243, 815 P.2d 538, 547 (1991); Griffin v. Sec. Pac. Auto. Fin. Servs. Corp., 33 F. Supp.2d 926, 931 (D. Kan. 1998). Courts grant summary judgment only "if there is no evidence of deceptive conduct." Gonzales, 266 Kan. 141, 166, 967 P.2d 312, 328 (1998); see also Bomhoff v. Nelnet Loan Servs., Inc., 279 Kan. 415, 424, 109 P.3d 1241, 1248 (2005); Udell v. Kan. Counselors, Inc., 313 F. Supp.2d 1135, 1145 (D. Kan. 2004).

Based on the evidence presented, the court cannot conclude that there is no evidence of deceptive conduct. Heritage had knowledge of Kan-Du and Falconburg's lack of experience and failed to disclose those facts which resulted in a profit from the sale of one of its modular homes. The court finds that the question of whether Heritage's acts were willful is one for a jury.

### 4. Negligence

Feldt alleges that Heritage was negligent in selecting Kan-Du, failing to train Kan-Du, failing to oversee the construction process and ensuring that her home was completed. In Kansas, a plaintiff must prove the following four elements to sustain a negligence cause of action: (1) plaintiff is owed a duty by defendant; (2) defendant breached the duty; (3) plaintiff sustained damages; (4) damages were proximately caused by the breach. P.W. v. Kansas Dept. of Soc. &

Rehab. Serv., 255 Kan. 827, 831, 877 P.2d 430 (1994).

Heritage moves for summary judgment on the basis that Feldt has failed to establish that it owed a duty to her.  In Kansas, negligence is not a matter of presumption but of proof that one owed a legal duty to another and breached the duty thereby causing injuries to the other.  Wicina v. Strecker, 242 Kan. 278, 280, 747 P.2d 167 (1987).  "Actionable negligence must be based on a breach of duty." Id.  Feldt's response fails to identify any basis on which Heritage owed her a duty.  The duty cannot be based on the alleged oral contract as the court has determined that the oral contract did not exist.

Because Feldt has failed to establish that Heritage owed her a duty under law or contract, Heritage's motion for summary judgment is granted.

### B.  Kan-Du and Falconburg's Motion for Summary Judgment

### 1.  Breach of Contract

Falconburg moves for summary judgment on Feldt's breach of contract claim on the basis that he did not enter into the purchase agreement with Feldt.  Feldt responds that Falconburg undertook to perform the contract and that Falconburg's admission in a letter he wrote to Feldt supports that conclusion.  The letter states that "you and I did sign a contract . . ." (Doc. 126, exh. 1).  The purchase agreement, however, identifies the parties as Kan-Du and Feldt.  Falconburg did not sign the agreement and his name is not listed as a party to the agreement.

In order to state a claim for breach of contract under Kansas law, Feldt must establish the existence of a contract between the parties.  Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc., 265 F.

-12-

Supp.2d 1179, 1187 (D. Kan. 2003).   Feldt has not done so.[9]
Falconburg's letter, signed by Kan-Du Construction and Marty
Falconburg, does not create an issue of material fact as to whether
Falconburg was a party to the purchase agreement when the agreement
clearly lists Kan-Du and Feldt as the parties.

Falconburg's motion for summary judgment on Feldt's claim of
breach of contract is granted.

### 2.  State Law Tort Claims

Kan-Du and Falconburg move for summary judgment on Feldt's tort
claims on the basis that the relationship between Feldt and Kan-Du was
contractual and there is no independent basis for the tort claims.
Defendants cite <u>Ford Motor Credit Co. v. Suburban Ford</u>, 237 Kan. 195
(1985) and <u>Beeson v. Erickson</u>, 22 Kan. App.2d 452 (1996) to support
its position.   In <u>Beeson</u>, the Kansas Court of Appeals cited <u>Suburban
Ford</u> for the proposition that a "contract action cannot become a tort
action by simply saying so. . . when the parties' difficulties arise
directly from a contractual relationship, the resulting litigation
concerning those difficulties is one in contract."  22 Kan. App.2d at
461.  In <u>Beeson</u>, the plaintiffs admittedly framed their action as one
in tort in order to avoid the mandatory arbitration clause in the
parties' contract.  The court is not persuaded that the <u>Beeson</u> opinion
has any relevance to this case.

More recently, however, the Kansas Supreme Court reaffirmed its
"long-standing caselaw recognizing that homeowners may sue a

---

[9]  Feldt's brief argues that a president of a company can procure
a breach by influencing the corporation to breach a contract.  (Doc.
126 at 22).  This claim, however, was not raised in the pretrial order
and will not be considered.

construction contractor in tort, contract, or both." <u>David v. Hett</u>, 293 Kan. 679, 695 (2011)(citing <u>McFeeters v. Renollet</u>, 210 Kan. 158, 163-64, (1972)).  A trial court is instructed to examine the nature and substance of the facts alleged in determining whether the claims are consistent with a breach of a contractual duty, legal duty or both.  <u>Id.</u> at 701.  "A breach of contract claim is the failure to perform a duty arising from a contract, and a tort claim is the violation of duty imposed by law, independent of the contract." <u>Id.</u>

Feldt and Kan-Du entered into a contract in which Feldt was obligated to pay the amount due under the contract and Kan-Du was to complete the site work listed after the home was delivered to Feldt's property.  Kan-Du's failure to complete the site work in accordance with the contract could constitute a breach of the contract.  The contract, however, has no terms regarding a warranty or the manner in which the work will be completed.

Under Kansas law, there is implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner.  <u>Zenda Grain & Supply Co. v. Farmland Industries, Inc.</u>, 20 Kan. App.2d 728, 738-39, 894 P.2d 881 (1995).[10] A breach of this duty is a tort.  Feldt's allegations in this case state that the home is deficient and improperly constructed and will cost thousands of dollars to repair.  Moreover, Kan-Du and Falconburg abandoned the construction and failed to pay the sub-contractors, forcing Feldt to hire additional contractors and resulting in the

---

[10]   Falconburg can be held liable for his actions while performing the contract.  <u>See</u> <u>McFeeters v. Renollet</u>, 210 Kan. 158, 161-162, 500 P.2d 47, 50 (1972).

-14-

unpaid sub-contractors filing mechanic's liens against Feldt's property.

Therefore, the court finds that Feldt has sufficiently alleged facts which support both a breach of contract claim against Kan-Du and independent tort claims against both Kan-Du and Falconburg.  Kan-Du and Falconburg's motion for summary judgment on Feldt's tort claims is accordingly denied.

### 3.  Punitive Damages

Kan-Du and Falconburg move for summary judgment on Feldt's punitive damages claim on the basis that Feldt's claims arise from the agreement or, alternatively, that Feldt cannot establish reckless or wanton conduct.

In order to succeed on her claim for punitive damages, Feldt must prove by clear and convincing evidence that Kan-Du and Falconburg acted with willful conduct, wanton conduct, fraud or malice.  Fusaro v. First Family Mtg. Corp., 257 Kan. 794, 801-02, 897 P.2d 123 (1995). Feldt contends that Kan-Du and Falconburg's conduct in walking off the job is sufficient to create an issue of material fact on punitive damages and cites to two decisions from a bankruptcy court in the District of Rhode Island.  Those decisions do not support Feldt's position.  The court finds that Kan-Du and Falconburg's conduct in failing to complete the construction job does not rise to the level of willful or wanton conduct which would support an award of punitive damages.

Therefore, Kan-Du and Falconburg's motion for summary judgment on Feldt's claim for punitive damages is granted.

**IV.     Conclusion**

Heritage's motion for summary judgment is granted in part and denied in part.  (Doc. 103).   Kan-Du and Falconburg's motion for summary judgment is granted in part and denied in part.  (Doc. 105).

This case is set for trial on January 20, 2015, at 9:00 a.m.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau</u> <u>v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992).  The response to any motion for reconsideration shall not exceed 3 double-spaced pages.  No reply shall be filed.


IT IS SO ORDERED.

Dated this  23rd   day of September 2014, at Wichita, Kansas.


<u>s/ Monti Belot</u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-16-